GLENN KATON (SBN 281841)
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
Phone: 510-463-3350
Fax: 510-463-3349

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| COREY MASON EDWARD HUGHES, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| vs. | |
| CITY OF STOCKTON, a public entity; CITY OF STOCKTON police officers MICHAEL RODRIGUEZ, MOLTEN, WONG, and ABDALAH; COUNTY OF SAN JOAQUIN, a public entity; San Joaquin County Sheriff's Deputy RICHARD H. GARCIA, JR.; California Department of Corrections and Rehabilitation Fugitive Apprehension Team (CDCR-FAT) Agent CASILLAS; CDCR-FAT Agent C. RODRIGUEZ; and DOES 1–32, Jointly and Severally, | |
| Defendants. | |

Plaintiff COREY HUGHES, for his Complaint against Defendants, pleads as follows:

## JURISDICTION

1. This is a civil rights action arising from Defendants' unreasonable seizure and use of excessive force against Plaintiff COREY HUGHES on or about December 21, 2017.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because it is brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff brings this pursuant to the Fourth Amendment to the United States Constitution, as well as the laws and Constitution of the State of California.

3. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under California state law.

4. A substantial part of the acts and/or omissions in this Complaint occurred in the City of Stockton, County of San Joaquin, California, and, pursuant to Eastern District Civil Local Rule 120(d), this action is properly assigned to the Sacramento Division of the United States District Court for the Eastern District of California.

## PARTIES AND PROCEDURE

5. Plaintiff COREY HUGHES is a citizen of the United States, a competent adult, and a resident of the State of California.

6. Defendant CITY OF STOCKTON is a public entity, established by the laws and Constitution of the State of California, which owns, operates, manages, directs, and controls the Stockton Police Department (SPD), and employs and/or is responsible for other defendants in this action. Pursuant to California Government Code § 815.2, Defendant CITY is vicariously liable for the state-law torts of its employees and agents, including the individual Defendants.

7. Defendant MICHAEL RODRIGUEZ, at all material times, was a Police K-9 handler assigned to the CITY'S SPD's "Police and Corrections Team (PACT)," and he was acting within the course and scope of that employment.

8. Defendant WONG, at all material times, was an SPD officer, and he was acting within the course and scope of that employment.

9. Defendant ABDALAH, at all material times, was an SPD officer, and he was acting within the course and scope of that employment.

10. The true names and capacities of Defendants sued herein as SPD DOES 1–10 are employees and/or agents of the CITY, who are unknown to Plaintiff HUGHES; therefore, Plaintiff HUGHES sues said Defendants by such fictitious names. Plaintiff HUGHES will seek leave to amend this Complaint to show their true names and capacities when the same are ascertained.

11. Defendant C. RODRIGUEZ, at all material times, was an agent with the California Department of Corrections and Rehabilitation's (CDCR)'s Fugitive Apprehension Team (FAT), and he was acting within the course and scope of that employment.

12. Defendant CASILLAS, at all material times, was an agent with the California Department of Corrections and Rehabilitation's (CDCR)'s Fugitive Apprehension Team (FAT), and he was acting within the course and scope of that employment.

13. The true names and capacities of Defendants sued herein as CDCR-FAT DOES 11–21 were employees and/or agents of the California Department of Corrections and Rehabilitation (CDCR)'s Fugitive Apprehension Team (FAT). These CDCR-FAT DOES 11–21 were acting within the course and scope of that employment.

14. Defendant SAN JOAQUIN COUNTY ("COUNTY") is a public entity, established by the laws and Constitution of the State of California, which owns, operates, manages, directs, and controls the San Joaquin County Sheriff's Office (SJCSO), and is the employer of the individual COUNTY Defendants, as well as certain DOE Defendants.

15. Defendant RICHARD H. GARCIA, Jr., at all material times, was a SJCSO Deputy, and he was acting within the course and scope of that employment.

16. The true names and capacities of Defendants sued herein as SJCSO DOES 22–32 are unknown to Plaintiff HUGHES, who therefore sues said Defendants by such fictitious names. Plaintiff HUGHES will seek leave to amend this Complaint to show their true names and capacities when the same are ascertained.

17. Plaintiff HUGHES is informed and believes, and thereon alleges, that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff HUGHES.

18. Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOE Defendants.

19. Plaintiff HUGHES is informed and believes, and thereon alleges, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.

20. Plaintiff HUGHES is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise, specifically alleged.

21. At all material times, each Defendant was jointly engaged in tortious activity, and was an integral participant in the events and violations of rights described herein, resulting in the deprivation of Plaintiff HUGHES' constitutional rights and other harm.

22. The actions of Defendants in effecting the arrest of Plaintiff HUGHES were pursuant to the actual customs, policies, practices, and procedures of Defendants CITY and COUNTY.

23. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the CITY, COUNTY, and/or State of California.

24. Plaintiff HUGHES timely and properly filed government code claims against all Defendant entities pursuant to California Government Code § 910 *et seq*, and this action is timely filed within all applicable statutes of limitation.

25. This Complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

26. Since the passage of AB-109, California law provides that convicted persons may be housed at county-run facilities, where previously they would have been sent to state prisons.

27. The San Joaquin County Jail Honor Farm is a low-security facility for minor offenders serving short sentences.

28. As San Joaquin County Sheriff Steve Moore has told the media, "[t]he ones we send to the Honor Farm are truly low-risk, supposed to be non-violent, which is the only reason we put them in that position. Anyone we believe is not [low-risk] stays in the main facility."

29. Because the prisoners at the Honor Farm are low-risk, during work hours, the Honor Farm sends vans with prisoner work crews to labor for entities such as CalTrans; afterwards, "organized activities such as softball, handball, and basketball are supervised . . . by recreation staff."

30. The Honor Farm also has a longstanding issue with prisoners escaping from the Honor Farm or its work crews. Between 2004 and 2017, there have been at least 274 escapees from the Honor Farm and work crews sent out from the facility.

31. As of about March 2017, according to the San Joaquin County Sheriff's Office, all but one prisoner had been recaptured.

32. San Joaquin County Sheriff Moore indicated that prisoners escaping from the Honor Farm is *not* a public-safety issue, telling the media that the public can feel safe: "I believe they do [feel safe], or I wouldn't have been elected three times."

33. In November 2017, Plaintiff HUGHES was serving a sentence at the Honor Farm for a misdemeanor. He was working with a crew throughout the day that had been picking up trash on the side of the road.

34. When going to put tools away, Plaintiff HUGHES climbed over a fence and left. Hours later, the work crew supervisor realized Plaintiff was not with the crew.

35. On or about November 28, 2017, one or more SJCSO DOE DEFENDANTS 22–32 obtained an escape warrant for Plaintiff HUGHES for a violation of California Penal Code § 4532(b)(1).

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                             Page 5

36. Plaintiff HUGHES had been staying at various residences.

37. By about December 20, SJCSO DOE DEFENDANTS 22–32 had been searching for Plaintiff HUGHES for about a month. During the evening of December 20, Plaintiff HUGHES went to stay with Mr. Ward, an acquaintance, in a single-family home in a residential neighborhood at 9041 Don Avenue, Stockton, California 95209.

38. On December 21, 2017, at about 8:00 a.m., Defendant GARCIA was assigned to the Corrections Community Partnership Task Force (AB109), partnered with Defendant ABDALAH, assigned to SPD's Gang Violence Suppression Unit as a cease-fire agent. Accompanying Defendants GARCIA and ABDALAH were Defendants C. RODRIGUEZ and CASILLAS, and other members of the team.

39. About 9:00 am, Defendant GARCIA met with members of the Fugitive Apprehension Team and Defendant M. RODRIGUEZ and, after speaking to a witness, discovered that Plaintiff HUGHES was staying nearby, at 9041 Don Avenue, Stockton.

40. Perimeter units and surveillance were strategically placed in all four corners around the residence at 9041 Don Avenue.

41. About 11:55 am, Ward emerged from the house at 9041 Don Avenue to get the mail. Defendants converged on the location and asked Mr. Ward if he had any contact with Plaintiff HUGHES. Ward replied that Plaintiff HUGHES was inside the house, and that he was wearing a black hooded sweat shirt with white writing, dark jeans, and black shoes.

42. At some point, Defendants believed that Plaintiff HUGHES had exited from the rear of the residence at 9041 Don Avenue. Defendants set a perimeter around the block and the residence at 9041 Don Avenue. SPD units converged on the area and assisted with a short block search, and they also deployed their drone to check backyards for possible locations.

43. In fact, Plaintiff HUGHES had not left the residence. Ward gave Defendants the keys to his house, and he again confirmed that Plaintiff HUGHES was inside.

44. At about 12:45 p.m., Defendant M. RODRIGUEZ, along with Sergeant MOLTEN, officers ABDALAH and WONG, and one or more of SPD DOES 1–10, CDCR-FAT DOES 11–21, and SJCSO DOES 22–32, used Ward's key to open the front door. Once it was

open, and upon entry, Defendants immediately contacted Plaintiff HUGHES in the front entryway.

45. Plaintiff HUGHES was standing unarmed, with nothing in his hands, and he made no gesture or movement that a reasonable officer could understand to pose an immediate threat to anyone.

46. At least one Defendant officer commanded Plaintiff HUGHES to show his hands, and he quickly and readily complied.

47. Nevertheless, Defendant M. RODRIGUEZ commanded his K-9 *Cain* to bite and hold Plaintiff HUGHES.

48. Plaintiff HUGHES had not resisted, attempted to flee, nor had he done anything threatening towards Defendants or anyone else. Despite this, Defendant M. RODRIGUEZ released *Cain*, who mauled Plaintiff.

49. Plaintiff HUGHES was standing with his hands up while the K-9 tore into his lower legs, and several officers then tackled him, knocking Plaintiff to the ground, where he remained prone while he was further attacked and beaten.

50. Defendant M. RODRIGUEZ then saw Plaintiff HUGHES fall onto the floor, with K-9 *Cain* biting and holding his leg.

51. No Defendant had probable cause to believe that Plaintiff HUGHES had committed a serious or violent crime, or that he was about to flee. Although Plaintiff HUGHES had complied with the officer's command, had nothing in his hands, was neither fleeing nor resisting, and posed no immediate threat to Defendants or anyone else, *Cain* ran at Plaintiff HUGHES and bit his leg, causing him excruciating pain.

52. Defendant M. RODRIGUEZ, along with one or more of SPD DOES 1–10 and CDCR-FAT DOES 11–21, and SJCSO DOES 22–32, entered the residence and squatted down and grabbed Plaintiff HUGHES, who was lying on the floor on his back with K-9 *Cain* mauling his right lower leg.

53. Plaintiff HUGHES's right arm was pinned under his body and one or more Defendants had secured Plaintiff's left arm behind his back in a handcuff. Notwithstanding that

1  Plaintiff HUGHES had shown no resistance and was now incapacitated on the floor, Defendants
2  allowed K-9 *Cain* to continue to tear into Plaintiff's right lower leg.
3       54.    It would have been obvious to any reasonable officer that Plaintiff HUGHES had
4  surrendered and posed no threat to the officers.
5       55.    Nevertheless, Defendant M. RODRIGUEZ did not command *Cain* to stop biting
6  Plaintiff HUGHES, nor did an Defendant attempt to intervene to stop the biting.
7       56.    Further, Defendant M. RODRIGUEZ and other officers punched Plaintiff
8  HUGHES in the face with a closed fist numerous times. Defendants who Plaintiff HUGHES
9  could not see while they punched and stomped his face also slashed the back of his legs with a
10 knife or other sharp instrument, causing straight gashes in his flesh (distinguishable from jagged
11 dog bites), extreme pain and disfigurement.
12      57.    Defendant M. RODRIGUEZ, using his right elbow, then pressed his entire body
13 weight onto Plaintiff HUGHES.
14      58.    Defendants SPD DOES 1–10 and/or CDCR-FAT DOES 11–21 were on top of
15 Plaintiff HUGHES' torso and were handcuffing him—even though *Cain* was still attached to his
16 right leg.
17      59.    Defendant M. RODRIGUEZ then stood up and ordered Defendant WONG,
18 Defendants SPD DOES 1–10, and/or CDCR-FAT DOES 11–21 to help him "clear" the dining
19 room, to make sure no additional people were there.
20      60.    Defendant M. RODRIGUEZ sadistically kept the K-9 mauling Plaintiff HUGHES
21 while Defendants SPD DOES 1–10 and/or CDCR-FAT DOES 11–21, and/or and SJCSO DOES
22 22–32 went to clear the dining room, even though Plaintiff HUGHES continued to offer no
23 resistance to Defendants and he was obviously helpless and surrounded by Defendants.
24      61.    Having "cleared" the dining room, Defendant M. RODRIGUEZ returned and
25 asked Defendants SPD DOES 1–10 and/or CDCR-FAT DOES 11–21 and/or and SJCSO DOES
26 22–32 who were holding Plaintiff HUGHES down, if they had control of Plaintiff HUGES'
27 arms, which they did.
28

62. Finally, Defendant M. RODRIGUEZ commanded *Cain* to release Plaintiff HUGHES' right leg.

63. At no time did a Defendant intervene to stop Defendant M. RODRIGUEZ from continuing the K-9 attack or other Defendants from brutally punching and stomping Plaintiff HUGHES' face, even though they had ample opportunity to do so given the amount of time that passed during the dog attack and beating.

64. After Defendants finished their attack and beating, Defendant Sergeant MOLTEN requested for AMR to respond to treat Plaintiff's HUGHES' severe injuries.

65. As a result of *Cain's* prolonged mauling, Plaintiff HUGHES had multiple severe wounds to his legs, including but not limited to: open wounds on the back of the calf of his left leg and on his right leg, and puncture wounds on his right leg.

66. Plaintiff HUGHES also had multiple bruises and a boot mark on his face from Defendants' beating, and gashes on the back of his legs from their slashing.

67. AMR then transported Plaintiff HUGHES to the hospital.

68. Once at the hospital, SJCSO DOE DEFENDANTS 22–32 took Plaintiff HUGHES into custody.

69. Sometime thereafter, Defendant M. RODRIGUEZ sought charges to be filed against Plaintiff HUGHES under California Penal Code § 148(a)(1), for having supposedly resisted, delayed, or obstructed a law-enforcement officer in the performance of his duties.

70. On or about January 2, 2018, on the San Joaquin County District Attorney's motion, and in the furtherance of justice, the court dismissed the California Penal Code § 148(a)(1) charge.

71. Acting as integral participants, each with fundamental involvement in the violations of Plaintiff HUGHES' rights described herein, Defendants subjected Plaintiff HUGHES to objectively unreasonable excessive force.

72. At all times during Plaintiff HUGHES' contact with Defendants, Plaintiff HUGHES behaved peacefully and without resistance.

73. Defendant M. RODRIGUEZ's deployment of K9 *Cain* to bite Plaintiff HUGHES, together with the conduct described above, constituted excessive force under the circumstances that caused serious injury to Plaintiff HUGHES.

74. The force used by Defendant M. RODRIGUEZ against Plaintiff HUGHES was unjustified and objectively unreasonable under the circumstances.

75. At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton, and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Plaintiff HUGHES' rights, done with actual malice, recklessness, gross negligence, deliberate indifference, negligence, and/or were otherwise objectively unreasonable.

76. Plaintiff HUGHES required medical treatment for his injuries caused by Defendants, and he has incurred medical bills.

77. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff HUGHES sustained the following injuries and damages, past and future, among others:

   a. Significant physical injuries requiring medical treatment, including but not limited to open wounds, puncture wounds, soft-tissue injuries, cuts and lacerations;
   b. Permanent scarring and other disfigurement;
   c. Violations of Fourth Amendment rights;
   d. Hospital and medical expenses;
   e. Pain and suffering, including emotional distress and psychic trauma;
   f. All legally cognizable special and general damages; and,
   g. All damages, costs, and attorneys' fees and penalties recoverable under 42 U.S.C. §§ 1983, 1988, California Civil Code §§ 52 and 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

### FIRST CAUSE OF ACTION
### (42 U.S.C. §1983 – Fourth Amendment Violation—Excessive Force)
### Against All Individual Defendants

78. By the actions and omissions described above, Defendants, acting under color of state law in their individual capacities, and as integral participants, deprived Plaintiff HUGHES of his civil rights under 42 U.S.C. § 1983 by violating his rights under the Fourth Amendment to the U.S. Constitution. These deprivations include, but are not limited to: The right to be free

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                                  Page 10

from excessive and unreasonable force in the course of arrest or detention as secured by the Fourth Amendment.

79. Defendants subjected Plaintiff HUGHES to their wrongful conduct, depriving Plaintiff HUGHES of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff HUGHES would be violated by their acts and/or omissions. Such omissions include the failure to intervene to stop other Defendants' excessive use of force.

80. The acts and/or omissions of Defendants, as set forth herein, were the moving force behind, and proximately caused injuries and damages to Plaintiff HUGHES as set forth at ¶ 76, above.

81. Supervisors present who failed to prevent the unconstitutional acts of other Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

82. The conduct of Defendants entitles Plaintiff HUGHES to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law. No punitive damages are sought against the COUNTY or CITY.

**COUNT TWO**
**-- VIOLATION OF CIVIL CODE §52.1 –**
**Against Defendants M. RODRIGUEZ, along with Sergeant MOLTEN, officers ABDALAH and WONG, and one or more of SPD DOES 1–10, CDCR-FAT DOES 11–21, and SJCSO DOES 22–32, and Defendants COUNTY and CITY**

83. By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described above, violated Plaintiff HUGHES' rights under California Civil Code § 52.1, and the following clearly established rights under the United States Constitution and the California Constitution:

    a.    The right to be free from unreasonable searches and seizures as secured by the Fourth Amendment;
    b.    The right to be free from excessive and unreasonable force in the course of arrest or detention as secured by the Fourth Amendment;
    c.    The right to be free from unlawful and unreasonable seizure of one's person as secured by the California Constitution, Article 1, Section 13;
    d.    The right to be free from unreasonable and excessive force, as secured by the California Constitution, Article 1, Section 13; and

**COMPLAINT AND DEMAND FOR JURY TRIAL**                        Page 11

  e. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

84. Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiff HUGHES' rights, Defendants violated Plaintiff HUGHES' rights by the following conduct constituting threats, intimidation, or coercion:

  a. Defendant M. RODRIGUEZ deploying his K-9 *Cain* upon Plaintiff HUGHES in the absence of any threat or justification whatsoever;

  b. Defendant M. RODRIGUEZ using force against Plaintiff HUGHES in the absence of any threat or justification whatsoever;

  c. Defendant M. RODRIGUEZ improperly encouraging the continuation of *Cain's* attack and excessive duration of the bite by delaying, without justification, in calling off *Cain*;

  d. Violating Plaintiff HUGHES' rights to be free from unlawful seizures under Cal. Const. Art. 1, Sec. 13, by excessive force (*see Bender v. County of Los Angeles*, 217 Cal. App. 4th 968 (2013)).

85. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff HUGHES' rights under the United States and California Constitutions and statutes, Plaintiff HUGHES sustained injuries and damages, and is entitled to relief as set forth above at ¶ 76, and all damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to costs, attorneys' fees, treble damages, and civil penalties.

**COUNT THREE**
**-- NEGLIGENCE --**
<u>**ALL DEFENDANTS**</u>

86. At all times, each Defendant owed Plaintiff HUGHES the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

87. At all times, each Defendant owed Plaintiff HUGHES the duty to act with reasonable care.

88. These general duties of reasonable care and due care owed to Plaintiff HUGHES by all Defendants include but are not limited to the following specific obligations:

  a. to refrain from using or tolerating the use of excessive and/or unreasonable force against Plaintiff HUGHES;

  b. to refrain from wrongfully arresting and/or detaining Plaintiff HUGHES, or tolerating such conduct by others;

  c. to refrain from tactics and conduct that led to the otherwise unnecessary seizure of and use of force against Plaintiff HUGHES;

  d. to refrain from abusing their authority granted them by law;

e.  to refrain from violating Plaintiff HUGHES' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

89.  Additionally, these general duties of reasonable care and due care owed to Plaintiffs HUGHES by Defendants COUNTY and CITY include but are not limited to the following specific obligations:

a.  to properly and reasonably hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or deputies, including Defendant M. RODRIGUEZ, to ensure that those employees/agents/deputies act at all times in the public interest and in conformance with law;

b.  to make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiff HUGHES';

c.  to institute and enforce proper procedures and training for deploying K-9s;

d.  to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth above.

90.  Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff HUGHES.

91.  As a direct and proximate result of Defendants' negligence, Plaintiff HUGHES sustained injuries and damages, and is entitled to relief as set forth above at ¶ 76, and punitive damages against all individual Defendants.

**COUNT FOUR**
**-- ASSAULT AND BATTERY --**
**DEFENDANTS M. RODRIGUEZ AND CITY**

92.  The actions and omissions of Defendants as set forth above constitute assault and battery.

93.  As a direct and proximate result of Defendants' assault and battery of Plaintiff HUGHES, he sustained injuries and damages, and is entitled to relief as set forth above at ¶ 76, above.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure, for all claims for which a jury is permitted.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff HUGHES respectfully requests the following relief against Defendants:

a. Compensatory damages in an amount according to proof and which is fair, just and reasonable;

b. Punitive damages against the individual officers described herein, under 42 U.S.C. § 1983 and California law, in an amount according to proof and which is fair, just, and reasonable;

c. Attorney's fees under 42 U.S.C. § 1988;

d. Costs of suit under 28 U.S.C. § 1920;

e. Attorney's fees under California Civil Code §§ 52 (b)(3) and 52.1(h);

f. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure § 1021.5; California Civil Code §§ 52 et seq. and 52.1; and as otherwise may be allowed by California and/or federal law; and

g. Such other and further relief in favor of Plaintiff as is just and proper.

Respectfully Submitted,

**KATON.LAW**

*/s/ Glenn Katon*
GLENN KATON