Glenn Katon (SBN 281841)
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
Phone: 510-463-3350
Fax: 510-463-3349

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| COREY MASON EDWARD HUGHES,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF STOCKTON, a public entity; City of Stockton police officers MICHAEL RODRIGUEZ, ROBERT MOLTHEN, ROBERT WONG, and KATHRYN ABDALLAH; COUNTY OF SAN JOAQUIN, a public entity; San Joaquin County Sheriff's Deputy RICHARD H. GARCIA, JR.; California Department of Corrections and Rehabilitation Fugitive Apprehension Team Agents HARVEY CASILLAS and CHRIS RODRIGUEZ; and DOES 1–32, Jointly and Severally,<br><br>Defendants. | Case No.: 2:18-cv-03188-JAM-DB<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiff COREY HUGHES, files this Second Amended Complaint against Defendants, pursuant to the parties' stipulation and the Court's order (Dkt 8):

## JURISDICTION

1. This is a civil rights action arising from Defendants' unreasonable seizure and use of excessive force against Plaintiff COREY HUGHES on or about December 21, 2017.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because it is brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988.

3. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under California state law.

4. A substantial part of the acts and/or omissions in this Complaint occurred in the City of Stockton, County of San Joaquin, California, and, pursuant to Eastern District Civil Local Rule 120(d), this action is properly assigned to the Sacramento Division of the United States District Court for the Eastern District of California.

## PARTIES AND PROCEDURE

5. Plaintiff COREY HUGHES is a citizen of the United States, a competent adult, and a resident of the State of California.

6. Defendant CITY OF STOCKTON is a public entity, established by the laws and Constitution of the State of California, which owns, operates, manages, directs, and controls the Stockton Police Department (SPD), and employs and/or is responsible for other defendants in this action. Pursuant to California Government Code § 815.2, Defendant CITY is vicariously liable for the state-law torts of its employees and agents, including the individual Defendants.

7. Defendant MICHAEL RODRIGUEZ, at all material times, was an armed SPD police officer acting within the course and scope of that employment.

8. Defendant ROBERT WONG, at all material times, was an armed SPD officer acting within the course and scope of that employment.

9. Defendant KATHRYN ABDALLAH, at all material times, was an armed SPD officer acting within the course and scope of that employment.

10. The true names and capacities of Defendants sued herein as SPD DOES 1–10 are employees and/or agents of the CITY, who are unknown to Plaintiff HUGHES; therefore, HUGHES sues said Defendants by such fictitious names. HUGHES will seek leave to amend this Complaint to identify their true names and capacities when the same are ascertained.

11. Defendant CHRIS RODRIGUEZ, at all material times, was an armed agent with the California Department of Corrections and Rehabilitation's (CDCR)'s Fugitive Apprehension Team (FAT) acting within the course and scope of that employment.

12. Defendant HARVEY CASILLAS, at all material times, was an armed agent with the CDCR FAT acting within the course and scope of that employment.

13. The true names and capacities of Defendants sued herein as CDCR FAT DOES 11–21 were employees and/or agents of the CDCR FAT. These CDCR FAT DOES 11–21 were acting within the course and scope of that employment.

14. Defendant SAN JOAQUIN COUNTY ("COUNTY") is a public entity, established by the laws and Constitution of the State of California, which owns, operates, manages, directs, and controls the San Joaquin County Sheriff's Office (SJCSO), and is the employer of the individual COUNTY Defendants, as well as certain DOE Defendants.

15. Defendant RICHARD H. GARCIA, JR., at all material times, was an armed SJCSO Deputy acting within the course and scope of that employment.

16. The true names and capacities of Defendants sued herein as SJCSO DOES 22–32 are unknown to HUGHES, who therefore sues said Defendants by such fictitious names. HUGHES will seek leave to amend this Complaint to identify their true names and capacities when the same are ascertained.

17. The actions of Defendants in apprehending HUGHES on December 21, 2017 were pursuant to the actual customs, policies, practices, and procedures of Defendants CITY and COUNTY.

18. HUGHES timely and properly filed government code claims against all Defendant entities pursuant to California Government Code § 910 *et seq*, and this action is timely filed within all applicable statutes of limitation.

## GENERAL ALLEGATIONS

19. Since the passage of AB-109, California law provides that convicted persons may be housed at county-run facilities, where previously they would have been sent to state prisons.

20. The San Joaquin County Jail Honor Farm is a low-security facility for minor offenders serving short sentences.

21. As San Joaquin County Sheriff Steve Moore has told the media, "[t]he ones we send to the Honor Farm are truly low-risk, supposed to be non-violent, which is the only reason we put them in that position. Anyone we believe is not [low-risk] stays in the main facility."

22. Because the prisoners at the Honor Farm are low-risk, during work hours, the Honor Farm sends vans with prisoner work crews to labor for entities such as CalTrans; afterwards, "organized activities such as softball, handball, and basketball are supervised . . . by recreation staff."

23. The Honor Farm also has a longstanding issue with prisoners escaping from the Honor Farm or its work crews. Between 2004 and 2017, there have been at least 274 escapees from the Honor Farm and work crews sent out from the facility.

24. As of about March 2017, according to the San Joaquin County Sheriff's Office, all but one prisoner had been recaptured.

25. San Joaquin County Sheriff Moore indicated that prisoners escaping from the Honor Farm is *not* a public-safety issue, telling the media that the public can feel safe: "I believe they do [feel safe], or I wouldn't have been elected three times."

26. In November 2017, HUGHES was serving a sentence at the Honor Farm for a misdemeanor. He was working with a crew throughout the day that had been picking up trash on the side of the road.

27. When going to put tools away, HUGHES climbed over a fence and left. Hours later, the work crew supervisor realized Plaintiff was not with the crew.

28. By about December 20, 2017, HUGHES was staying with Hal Ward, an acquaintance, in a single-family home in a residential neighborhood at 9041 Don Avenue, Stockton, California.

29.   On December 21, 2017, at about 8:00 a.m., GARCIA, ABDALLAH, CHRIS RODRIGUEZ, and CASILLAS assembled as a team to apprehend HUGHES.

30.   About 9:00 am, GARCIA met with members of the Fugitive Apprehension Team and MICHAEL RODRIGUEZ and, after speaking to a witness, discovered that HUGHES was staying nearby, at 9041 Don Avenue, Stockton.  RODRIGUEZ and other Defendants developed a tactical plan to enter the residence and apprehend HUGHES.

31.   Perimeter units and surveillance, some or all of whom are Defendants, were strategically placed in all four corners around the residence at 9041 Don Avenue.

32.   About 11:55 a.m., Ward emerged from the house at 9041 Don Avenue to get the mail.  Defendants converged on the location and asked Mr. Ward if he had any contact with HUGHES.  Ward replied that HUGHES was inside the house, and that he was wearing a black hooded sweat shirt with white writing, dark jeans, and black shoes.  Ward gave Defendants the keys to his house and permission to enter. Officers then transported Ward far enough away from his house so that he could not witness Defendants' misconduct.

33.   At about 12:45 p.m., MICHAEL RODRIGUEZ, MOLTHEN, ABDALLAH, WONG, GARCIA, CASILLAS, and CHRIS RODRIGUEZ entered the front door of Ward's home. Once in the front entryway, MICHAEL RODRIGUEZ called for HUGHES to show his hands and come to the front of the house, or they would let their attack dog find and attack him.

34.   HUGHES was in a room in the back of the house and immediately yelled that his hands were up, he was coming out, and Defendants should not release the attack dog. No Defendant had reason to believe that HUGHES had committed a violent crime, or that he was about to flee.

35.   As he walked down the hallway to the entryway, HUGHES repeated loudly hat his hands were up, he was coming out, and Defendants should not release the attack dog.  Even if HUGHES were inclined to resist the officers, which he was not, he knew that resisting several officers and an attack dog would only cause him serious injury. So he was careful in his actions not to give Defendants any reason to mistakenly think he was resisting and in his words to convey that his hands were up and he was not resisting.

36. It would have been obvious to any reasonable officer that HUGHES had surrendered and posed no threat to the officers.

37. Notwithstanding HUGHES' compliance with MICHAEL RODRIGUEZ's command that he come to the front of the house with his hands up and his telling Defendants emphatically that he was, in fact, complying, when HUGHES was approximately seven feet from the officers, MICHAEL RODRIGUEZ released the attack dog on him.

38. HUGHES fell to the ground and while the attack dog was tearing into his lower legs, some combination of four or more Defendants listed at ¶ 33, above, piled on top of him and beat him while handcuffing him behind his back. HUGHES could not see which of the Defendants were beating and cuffing him.

39. From the time MICHAEL RODRIGUEZ released the attack dog until HUGHES was handcuffed, less than 15 seconds elapsed. At no time during that period did HUGHES resist the officers.

40. Although HUGHES was handcuffed behind his back and at least seven armed officers were present, Defendants continued to allow the attack dog to bite and tear into his legs. Moreover, Defendants continued to punch and kick HUGHES while he was handcuffed and the dog continued to maul him.

41. Defendants who HUGHES could not see while they punched and stomped his face also slashed the back of his legs with a knife or other sharp instrument, causing straight horizontal gashes in his flesh (distinguishable from jagged dog bites), and extreme pain and disfigurement.

42. At least two and a half minutes passed while HUGHES was handcuffed, the attack dog was mauling him, and Defendants continued to punch and kick him. At no time did any Defendant attempt to intervene to stop the unnecessary and grossly excessive force used on HUGHES.

43. As a result of Defendants' siccing an attack dog on HUGHES, punching and kicking him repeatedly, and slashing the back of his legs, HUGHES suffered severe pain, disfigurement, and emotional trauma.

44. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, HUGHES sustained the following injuries and damages, past and future, among others:

    a. Significant physical injuries requiring medical treatment, including but not limited to open wounds, puncture wounds, soft-tissue injuries, cuts and lacerations;

    b. Permanent scarring and other disfigurement;

    c. Violations of Eighth Amendment rights;

    d. Hospital and medical expenses;

    e. Pain and suffering, including emotional distress and psychic trauma;

    f. All legally cognizable special and general damages; and,

    g. All damages, costs, and attorneys' fees and penalties recoverable under 42 U.S.C. §§ 1983, 1988, California Civil Code §§ 52 and 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. §1983 – Eighth Amendment – Excessive Force)**
**Against All Individual Defendants**[1]

45. By the actions and omissions described above, Individual Defendants, acting under color of state law, used excessive and unreasonable force on HUGHES for the very purpose of causing harm, and did cause him grievous harm.

46. Even if any of the Individual Defendants did not themselves use excessive force on HUGHES, they failed to intervene to prevent the continued use of such force despite having ample opportunity to do so in violation of the Eighth Amendment.

47. Even if any of the Individual Defendants did not themselves use excessive force on HUGHES, they were still fundamentally involved in the conduct that caused the violation by providing armed back up, and planning and actively participating in the use excessive force in violation of the Eighth Amendment.

---

[1] "Individual Defendants" means Defendants MICHAEL RODRIGUEZ, MOLTHEN, ABDALLAH, WONG, GARCIA, CASILLAS, and CHRIS RODRIGUEZ.

**COUNT TWO**
**– VIOLATION OF CIVIL CODE §52.1 –**
**Against Defendants MICHAEL RODRIGUEZ and one or more of SPD DOES 1–10, CDCR-FAT DOES 11–21, and SJCSO DOES 22–32, and COUNTY and CITY**

48. By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described above, violated HUGHES' rights under California Civil Code § 52.1, and the following clearly established rights under the United States Constitution and the California Constitution:

   a. The right to be free from excessive and unreasonable force in the course of being apprehended as secured by the Eighth Amendment;

   b. The right to be free from unlawful and unreasonable seizure of one's person as secured by the California Constitution, Article 1, § 13;

   c. The right to be free from unreasonable and excessive force, as secured by the California Constitution, Article 1, § 13; and

   d. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

49. Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of HUGHES' rights, Defendants violated HUGHES' rights by the following conduct constituting threats, intimidation, or coercion:

   a. MICHAEL RODRIGUEZ deploying his attack dog on HUGHES in the absence of any threat or justification whatsoever;

   b. MICHAEL RODRIGUEZ using force against HUGHES in the absence of any threat or justification whatsoever;

   c. MICHAEL RODRIGUEZ improperly encouraging the continuation of the dog attack and excessive duration of the bite by delaying, without justification, in calling off the attack dog;

   d. Violating HUGHES' rights to be free from unlawful seizures under California Constitution, Article 1, § 13, by excessive force (*see Bender v. County of Los Angeles*, 217 Cal. App. 4th 968 (2013)).

50. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of HUGHES' rights under the United States and California Constitutions and statutes, HUGHES sustained injuries and damages, and is entitled to recover all damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to costs, attorneys' fees, treble damages, and civil penalties.

## COUNT THREE
## – NEGLIGENCE –
## ALL DEFENDANTS

51. At all times relevant to this Amended Complaint, each Defendant owed HUGHES the duty to act with reasonable care.

52. These general duties of reasonable care owed to HUGHES by all Defendants include, but are not limited to, the following specific obligations:

    a. to refrain from using or tolerating the use of excessive and/or unreasonable force against HUGHES;

    b. to refrain from tactics and conduct that led to the otherwise unnecessary seizure of and use of force against HUGHES;

    c. to refrain from abusing their authority granted them by law;

    d. to refrain from violating HUGHES' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

53. Additionally, these general duties of reasonable care owed to Plaintiffs HUGHES by Defendants COUNTY and CITY include but are not limited to the following specific obligations:

    a. to properly and reasonably hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or deputies, including MICHAEL RODRIGUEZ, to ensure that those employees/agents/deputies act at all times in the public interest and in conformance with law;

    b. to make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including HUGHES;

    c. to institute and enforce proper procedures and training for deploying K-9s;

    d. to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth above.

54. Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to HUGHES.

55. As a direct and proximate result of Defendants' negligence, HUGHES sustained injuries and damages, and is entitled to relief as set forth above at ¶ 44, and punitive damages against all individual Defendants.

## COUNT FOUR
## – ASSAULT AND BATTERY –
## DEFENDANTS MICHAEL RODRIGUEZ AND CITY

56. The actions and omissions of Defendants as set forth above constitute assault and battery.

57. As a direct and proximate result of Defendants' assault and battery of HUGHES, he sustained injuries and damages, and is entitled to relief as set forth above at ¶ 44, above.

## JURY DEMAND

Plaintiff demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure, for all claims for which a jury is permitted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HUGHES respectfully requests the following relief against Defendants, jointly and severally:

a. Compensatory damages in an amount according to proof and which is fair, just and reasonable;

b. Punitive damages against the individual officer defendants, under 42 U.S.C. § 1983 and California law, in an amount according to proof and which is fair, just, and reasonable;

c. Attorney's fees under 42 U.S.C. § 1988;

d. Costs of suit under 28 U.S.C. § 1920;

e. Attorney's fees under California Civil Code §§ 52(b)(3) and 52.1(h);

f. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure § 1021.5; California Civil Code §§ 52 et seq. and 52.1; and as otherwise may be allowed by California and/or federal law; and

g. Such other and further relief in favor of Plaintiff as is just and proper.

Respectfully Submitted,

KATON.LAW

/s/ Glenn Katon
GLENN KATON